### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

JENNA BARTHOLOMEW

        Plaintiff,

    v.

NEWELL BRANDS, INC.; YANKEE
CANDLE COMPANY, INC. a/k/a/
YANKEE PRODUCTS (a subsidiary
or corporation); WALMART
CORPORATION; and JOHN DOE
Entities (1-10) (fictitious
entities),

        Defendants.

1:20-cv-00376-NLH-JS

**OPINION**

---

APPEARANCES:

STEPHEN WILLIAM BARRY
Barry, Corrado, Grassi & Gillin-Schwartz, P.C.
2700 PACIFIC AVENUE
WILDWOOD, NJ 08260

    Attorney for the Plaintiff.

CHRISTOPHER PAUL MIDURA
Goldberg Segalla, L.L.P.
P.O. Box 580
Buffalo, NY 14201

    Attorney for the Defendants.

**<u>HILLMAN</u>, District Judge**

    This case concerns Plaintiff Jenna Bartholomew's claims

against Defendants Newell Brands, Inc., Yankee Candle Company,

Inc. a/k/a/ Yankee Products, and Walmart Corporation for

injuries Plaintiff sustained while visiting a Walmart location and handling a candle.  Pending before the Court is Defendant Walmart Corporation's motion to dismiss and Plaintiff's motion to remand.  For the reasons stated below, the Court will deny Plaintiff's motion to remand and grant Defendant Walmart Corporation's motion to dismiss.

## BACKGROUND

Plaintiff Jenna Bartholomew, a citizen of New Jersey, visited a Walmart Corporation ("Walmart") location in Rio Grande, New Jersey on December 16, 2017.  During her visit, Plaintiff examined a Yankee Candle on display.  Plaintiff alleges that the candle she examined had a "defect or crack or break" that caused a laceration and serious injury to her left hand.  Plaintiff alleges that Yankee Candle Company Inc. a/k/a Yankee Products ("Yankee Candle") is a subsidiary of Newell Brands, Inc. ("Newell Brands").  According to Plaintiff, the candle, its components, and packaging were not reasonably fit, suitable, or safe for its intended purpose, reasonably foreseeable use, or for safe handling by a retail customer.

Plaintiff filed a complaint on December 9, 2019 in the Superior Court of New Jersey, Camden County, Law Division. Plaintiff alleged two violations of the New Jersey Products Liability Act, N.J.S.A. 2A: 58C-1 et seq.  Count I names each of

the named defendants.  Count II asserts the same product

liability claim against "John Doe" defendants.

Although not separately denominated as distinct counts or

causes of action, as they should be, Plaintiff also asserts

claims of negligence (ECF No. 1, Exhibit A at ¶¶ 14, 19) and a

claim of breach of the warranty of merchantability, an implied

warranty, in both Counts I and II of the Complaint.  Id. at ¶¶

13, 19.  In general, Plaintiff alleges that Defendants are

liable for the defective candle and its presence in the stream

of commerce.  On January 10, 2020, Defendants removed this case

under 28 U.S.C. 1441(a), alleging diversity jurisdiction

pursuant to 28 U.S.C. § 1332.

Defendants Yankee Candle and Newell Brands then answered on

January 29, 2020, asserting various defenses.[1]  On the same date,

January 29, 2020, Defendant Walmart moved to dismiss Plaintiff's

---

[1] Defendants' defenses include: (a) Plaintiff's claims are barred
by the statute of limitations; (b) Defendants are not subject to
the jurisdiction of this court for reasons including
insufficient service of process; (c) Plaintiff fails to state a
claim upon which relief can be granted; (d) the incident was
caused by third parties over whom Defendants had no control; (e)
there was sufficient, intervening and superseding negligence
involved that precludes Plaintiff from recovering; (f)
Plaintiff's recovery should be barred or diminished by any
negligence attributable to her; (g) Plaintiff's recovery should
be reduced by her failure to mitigate damages; (h) Defendants
are entitled to a credit for all collateral sources from which
Plaintiff has received benefits; (i) Plaintiff's claims are
barred by laches, estoppel, and unclean hands; and (j) Plaintiff
has failed to join all parties and or claims necessary for
proper adjudication.

complaint pursuant to N.J.S.A. 2A:58C-9, a provision granting
immunity in product liability actions for product sellers who
file an affidavit certifying the identity of the manufacturer of
the questioned product.  The next day, January 30, 2020,
Plaintiff filed a motion to remand.  Both matters have been
fully briefed and are ripe for adjudication.

## DISCUSSION

A. Subject Matter Jurisdiction

According to Defendants, this court has diversity
jurisdiction pursuant to 28 U.S.C. 1332.  "[B]ecause subject
matter jurisdiction is non-waivable, courts have an independent
obligation to satisfy themselves of jurisdiction if it in
doubt."  Nesbit v. Gears Unlimited Inc., 347 F.3d 72, 76-77 (3d
Cir. 2003).  Ultimately, for the reasons discussed below, the
Court finds that it has subject matter jurisdiction over this
case.

B. Legal Standard for a Motion to Remand

Under 28 U.S.C. § 1441(b), a case based on diversity
jurisdiction is removable when "each opposing party [is] of
diverse citizenship from each other and the amount in
controversy [] exceed[s] $75,000." 28 U.S.C. § 1332(a); see also
Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart
Mgmt., Inc., 316 F.3d 408, 410 (3d Cir. 2003).  Once an action
has been removed, a plaintiff may challenge such a removal by

4

moving to remand the case back to State court.  28 U.S.C. §
1447.  Grounds for remand include: "(1) lack of district court
subject matter jurisdiction or (2) a defect in the removal
process."  Advanced Orthopedics & Sports Med. Inst. v. Blue
Cross Blue Shield of New Jersey, 2018 WL 3630131, at *2 (D.N.J.
July 31, 2018) (citing PAS v. Travelers Ins. Co., 7 F.3d 349,
352 (3d Cir. 1993)).

　　　"The party asserting jurisdiction bears the burden of
showing that at all stages of the litigation the case is
properly before the federal court."  Samuel-Bassett v. KIA
Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004).  Removal
statutes "are to be strictly construed against removal and all
doubts should be resolved in favor of remand."  Boyer v. Snap-on
Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

C. Plaintiff's Motion to Remand

　　　In her motion to remand, Plaintiff contests Defendants'
assertion that diversity jurisdiction exists in this case.
According to Plaintiff, she is domiciled in Cape May County, New
Jersey, making her a citizen of New Jersey.  Plaintiff alleges
that Defendant Newell Brands has its headquarters in Hoboken,
New Jersey.  Plaintiff alleges that because there is common
citizenship between her and Newell Brands, diversity
jurisdiction does not exist.

Defendants allege that complete diversity exists because Defendant Newell Brands is a Delaware corporation with its principal place of business in Atlanta, Georgia.  Defendants allege that Newell Brands announced its intention to move its principal place of business from Hoboken, New Jersey to Atlanta, Georgia in August 2019.  By November 2019, Defendants allege that this move was complete.  Thus, according to Defendants, Newell Brands is and was a citizen of Delaware and Georgia when Plaintiff filed this complaint in December 2019.  In the alternative, Defendants assert that even if the Court finds that Defendant Newell Brands had its principal place of business in New Jersey, its citizenship should be ignored because it was fraudulently or nominally joined.

The jurisdiction of the Court "depends on the state of things at the time of the action brought."  Mollan v. Torrance, 22 U.S. 537, 539 (1824).  Therefore, the Court will determine whether diversity jurisdiction existed when Plaintiff filed this complaint in December 2019.  As the party asserting jurisdiction, Defendants bear the burden of showing that at all stages of litigation, this case is properly before the Court.

The Court determines the citizenship of a corporation using 28 U.S.C. § 1332(c).  This section states in part that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State

or foreign state where it has its principal place of business .
. .”  28 U.S.C. § 1332(c)(1).  In Hertz Corp. v. Friend, the
Supreme Court explained the “nerve center” test for determining
where a corporation’s principal place of business is located.
See 559 U.S. 77, 80-81 (2010).  Under this test, a corporation’s
principal place of business is a single place “where a
corporation’s officers direct, control, and coordinate the
corporation’s activities.”  Id. at 92-93.  Usually, a
corporation’s headquarters is its nerve center but this test
focuses on where a corporation’s high-level decisions are made,
not where day-to-day activities are managed.  See Cent. W.
Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101,
106 (4th Cir. 2011).

Plaintiff alleges that when she filed this complaint on
December 9, 2019, Newell Brands had its principal place of
business in New Jersey.  To support this allegation, Plaintiff
has introduced a report Newell Brands filed with the State of
New Jersey as a business entity.  This report from December 6,
2019 lists Newell Brands’ main business address in Hoboken, New
Jersey.  In the same report, Newell Brand’s Principal Business
address is listed as “N/A.”  Defendants highlight that this
report also shows that Newell Brands’ CEO and other officers
were listed as located in Atlanta, Georgia.

In further support of her contention that Newell Brands had its principal place of business in Hoboken, New Jersey in December 2019, Plaintiff also introduced news articles from August 2019 that documented Newell Brand's intention to move its headquarters.  These articles state that Defendant Newell Brands expected to complete its moving process by the end of the first quarter of 2020.  Defendants have introduced evidence showing that on paperwork submitted to the Securities and Exchange Commission ("SEC") on November 1, 2019, Defendant Newell Brands listed its principal place of business as Atlanta, Georgia.

The Court finds that Defendants have met their burden of showing that this case is properly before this Court.[2]  The Court finds that when Plaintiff filed her complaint, Newell Brands had its principal place of business in Atlanta, Georgia.  Though parts of Defendant Newell Brands' operations may not have been fully relocated from its former main business address in Hoboken, New Jersey, the Court finds that using the nerve center

_____

[2] In this case, Plaintiff's motion to remand makes a factual attack on the Court's subject matter jurisdiction by alleging that diversity jurisdiction does not exist.  When considering a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations in the complaint, and can look beyond the pleadings to decide factual matters relating to jurisdiction.  See Cestonaro v. U.S., 211 F.3d 749, 752 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  As such, the Court, rather than a jury, will resolve the factual dispute regarding diversity jurisdiction in this case, looking beyond the pleadings as necessary.

test, Defendant Newell Brands' principal place of business was in Atlanta, Georgia starting in November 2019.  The location of Newell Brands' CEO and other officers, combined with its filings submitted to the SEC, are sufficient evidence to prove that the corporation's high-level decisions were made in Georgia, not New Jersey.

Because Defendant Newell Brands was a citizen of Georgia and Delaware at the time that the complaint was filed, the Court finds that the parties were diverse in citizenship.  The parties agree that the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332(a).  Therefore, the Court finds that this Court has subject matter jurisdiction over this case and will deny Plaintiff's motion to remand.[3]

   D. Standard for a Motion to Dismiss Pursuant to Fed. R. Civ.
      P. 12(b)(6)[4]

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon

---

[3] In light of this disposition, the Court need not address the alternative argument that Newell Brands was fraudulently or nominally joined.

[4] The Court notes that Defendant Walmart has not styled its motion to dismiss as a Rule 12(b)(6) motion but rather as a "Motion to Dismiss Pursuant to N.J.S.A. 2A:58C-9."  In reviewing the moving papers, the Court finds that while a document outside the Plaintiff's complaint has been submitted in support of Walmart's motion, the motion is one essentially for failure to state a claim under the NJPLA.  Accordingly, the 12(b)(6) standard is appropriate in this context.

which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In

considering a motion under Federal Rule of Civil Procedure

12(b)(6), a court must accept all well-pleaded allegations in

the complaint as true and view them in the light most favorable

to the pleader.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir.

2005); see also Philips v. Cnty. Of Allegheny, 515 F.3d 224, 228

(3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P.

12(b)(6), [a district court is] . . . required to accept as true

all factual allegations in the complaint and draw all inferences

from the facts alleged in the light most favorable to" the

plaintiff).  A pleading is sufficient if it contains a "short

and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).

     When weighing a motion to dismiss, the Court does not ask

"whether a plaintiff will ultimately prevail, but whether the

claimant is entitled to offer evidence to support the

claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 n. 8

(2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974));

see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our

decision in Twombly expounded the pleading standard for 'all

civil actions.'") (citations omitted).

     In applying the Twombly/Iqbal standard, a district court

will first "accept all of the complaint's well-pleaded facts as

true, but may disregard any legal conclusion."  Fowler v. UPMC

Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal,
556 U.S. at 678).  Next, the Court will "determine whether the
facts alleged in the complaint are sufficient to show that the
plaintiff has a 'plausible claim for relief.'"  Id. at 211
(citing Iqbal, 556 U.S. at 679).

     To meet this standard, a "complaint must do more than
allege the plaintiff's entitlement to relief." Id.; see also
Philips, 515 F.3d at 234 ("The Supreme Court's Twombly
formulation of the pleading standard can be summed up thus:
'stating . . . a claim requires a complaint with enough factual
matter (taken as true) to suggest' the required element.  This
'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element.") (citing Twombly, 550 U.S at 556).  The
party moving to dismiss under 12(b)(6) "bears the burden of
showing that no claim has been presented."  Hedges, v. United
States, 404 F.3d 744, 750 (3d Cir. 2005).

   E. Defendant Walmart's Motion to Dismiss

     The New Jersey Products Liability Act ("NJPLA"), N.J.S.A.
2A:58C, establishes causes of action for harm caused by a
product.  Specifically, N.J.S.A. 2A:58:C-2 provides that

          [a] manufacturer or seller of a product shall be
          liable for a product liability action only if the
          claimant proves by a preponderance of the evidence

that the product causing the harm was not reasonably
fit, suitable or safe for its intended purpose because
it: a. deviated from the design specifications,
formulae, or performance standards of the manufacturer
or from otherwise identical units manufactured to the
same manufacturing specifications or formulae, or b.
failed to contain adequate warnings or instructions,
or c. was designed in a defective manner.

N.J.S.A. 2A:58C-2.

As such, this statute establishes three causes of action
under the NJPLA: (a) design defect, (b) manufacturing defect,
and (c) warnings defect.  Mendez v. Shah, 28 F.Supp.3d 282, 296
(D.N.J. 2014) (citing Roberts v. Rich Foods, Inc., 139 N.J. 365,
375 (N.J. 1995); Dziewiecki v. Bakula, 361 N.J. Super. 90, 97-98
(App. Div. 2003)).  Under the NJPLA, the standard of liability
is whether the product was "reasonably fit, suitable or safe for
its intended purpose."  Id. (citing Cornett v. Johnson &
Johnson, 414 N.J. Super. 365 (App. Div. 2010)).  The "mere
occurrence of an accident and the mere fact that someone was
injured are not sufficient to demonstrate the existence of a
defect."  Id. (citations omitted).

Plaintiff has alleged that Defendant Walmart is liable
under the NJPLA for the harm caused.  Although the Complaint is
inartfully pled, it appears that Plaintiff also asserts
Defendant Walmart is liable for a breach of a warranty of
merchantability and negligence.  Plaintiff highlights that

Plaintiff's claims include allegations regarding the handling and display of the product, not merely the product itself.

Walmart claims that Plaintiff has failed to state a claim under the New Jersey Products Liability Act.  According to Walmart, Plaintiff asserts a claim for "harm caused by a product" and therefore can only bring a product liability action, not a negligence action.  Defendant Walmart next argues that Walmart is simply a "product seller" who, after submitting the affidavit contemplated by N.J.S.A. 2A:58C-9 naming the manufacturer, should be relieved of all strict liability claims under the NJPLA.  Defendant Walmart is correct in part.

The Court turns first to Defendant Walmart's argument that it cannot be liable for strict liability claims under the NJPLA. Under the clear terms of the NJPLA, "[o]nce the correct identity of the manufacturer has been provided, the product seller shall again be relieved of all strict liability claims, subject to subsection d. of this section . . ."  Section d lists the circumstances under which a product seller is liable:

(1)  the product seller exercised significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage;

(2)  the product seller knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had

knowledge of the alleged defect in the product which
caused the injury, death or damage; or

(3)   The product seller created the defect in the product
which caused the injury, death or damage.

N.J.S.A. 2A:58C-9(d).

The Complaint in this matter is devoid of any factual
allegations that would suggest a plausible claim that Defendant
Walmart participated in a significant degree in designing the
product at issue, knew or should have known of a defective
design, or otherwise created the defect itself.  Rather a fair
reading of the Complaint, as supplemented by Defendant's
N.J.S.A. 2A:58C-9 affidavit,[5] is that Walmart was merely the
retail seller of a product designed and manufactured by the
other defendants.  Absent factual allegations consistent with
the N.J.S.A. 2A:58C-9(d) exceptions, dismissal of any NJPLA
strict liability claims against Defendant Walmart is warranted.

---

[5] As noted above, N.J.S.A. 2A:58C-9 2.a. states that "In any
product liability action against a product seller, the product
seller may file an affidavit certifying the correct identity of
the manufacturer of the product which allegedly caused the
injury, death or damage."

Section 2.b. states in part that "Upon filing the affidavit
pursuant to subsection a. of this section, the product seller
shall be relieved of all strict liability claims, subject to the
provisions set forth in subsection d. of this section."

The parties do not dispute that Walmart has certified the
correct identify of the manufacturer of the candle at issue in
this case through its affidavit.

14

Under what circumstances a retail seller, like Defendant Walmart, of an allegedly dangerous product may be liable for common law claims such as a breach of an implied warranty of merchantability or mere negligence is a slightly more nuanced issue.  As a general matter, it is clear the NJPLA, more specifically N.J.S.A. 2A:58C-1(b)(3), "effected a merger of all product liability actions – except for express warranty claims – into one claim 'for harm caused by a product, irrespective of the theory underlying the claim . . .'"  New Jersey Dept. of Environmental Protection v. Hess Corp., 2018 WL 8581992, at *11 n. 6 (N.J. Super. Dec. 21, 2018) rev'd on other grounds (citing Tirrell v. Navistar Intern., Inc., 248 N.J. Super. 390, 398 (App. Div. 1991, certify. den. 127 N.J. 390 (1990)).  New Jersey Courts have previously interpreted this section of the NJPLA "to mean that negligence and the other common law claims other than for breach of express warranties are generally 'subsumed' within the statutory cause of action."  Id.

This is not to say, however, that a retail seller of a product causing an injury can never be liable for implied warranties or negligence.  Perhaps this simple example will illustrate the point.  Imagine that an employee of a retail seller drops a case of glass candles breaking several of them and causing dangerous edges of broken glass.  The employee and his store manager, failing to fully investigate and appreciate

15

the damage, place the broken candles on the shelf anyway
eventually harming a customer who has selected it for purchase.
While such a claim certainly involves "harm caused by a product"
it is not the kind the claim contemplated by the NJPLA which
governs causes of action focusing on product design and
manufacture.  It is therefore not enough to simply say that a
Plaintiff's claims of negligence and breach of an implied
warranty are always subsumed within the strict liability claims
created by the NJPLA and must be dismissed.

Having said that, other than a conclusory allegation of
negligence and breach of warranty there are no facts alleged in
the Complaint that would support a plausible claim on those
theories outside the confines of the NJPLA.  Nor does
Plaintiff's argument that the motion to dismiss is premature
"insofar as her negligence claim is concerned because the
circumstances of unpacking and display have not been explored,
and the fate of the product which caused the injury has not yet
been revealed by the defense."  ECF No. 13, at 2.  The
Iqbal/Twombly pleading standard requires Plaintiff to assert
such facts at the complaint stage if she can in good faith, not
to merely offer hope that future discovery might one day support
such a claim.  To the extent Plaintiff asserts standalone
negligence and breach of implied warranty claims, such claims
will be dismissed without prejudice for failure to state a

16

claim.  The Court will grant Defendant Walmart's motion to dismiss.

## CONCLUSION

For the reasons stated above, the Court will deny Plaintiff's motion to remand and grant Defendant Walmart's motion to dismiss.

An appropriate Order will be entered.


Date: September 30, 2020           s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

17